# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Electors of the City of York,      :
         Appellant      :
              :
              :    No. 750 C.D. 2022
        v.          :
              :    Argued: June 6, 2023
Michael Helfrich, Mayor of      :
the City of York      :
              :
Appeal of: Henry Nixon,      :
Katherine Young, Steven Young,      :
Burton Parry, Elizabeth Culp,      :
Judith McKee, Thomas McKee,      :
Judy Ritter-Dickson, Darnell      :
Bowman, Shilvosky Buffaloe,      :
Carla Evette Freeland, Lois      :
Garnett, Tim Garnett, Sarai      :
Kearse, Wajid DeShields,      :
Marcus DeShields, Shareef      :
Hameed, Antonietta Smith      :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STACY WALLACE, Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH              FILED: February 26, 2024

Appellants, Electors of the City of York (Electors), appeal the June 22, 2022 order of the Court of Common Pleas of York County (trial court), which denied their "Petition Pursuant to [Section 10801(b) of the Third Class City Code,[1]] 11 Pa. C.S. § 10801(b)[,] to Fill Vacancy in the Office of Mayor of York City" (Petition to

---

[1] 11 Pa. C.S. §§ 10101 – 14702.

Fill Vacancy).  Upon review, we affirm the trial court's June 22, 2022 order and allow the Mayor of the City of York (York) to remain in office but for reasons other than those stated by the trial court.

## I.     FACTS AND PROCEDURAL BACKGROUND

In the November 2021 General Election, Michael Helfrich (Mayor Helfrich) was reelected as the Mayor of York for his second term by 80% of the votes cast.  He took his oath of office on Tuesday, January 24, 2022.

On April 11, 2022, Electors filed the Petition to Fill Vacancy.  Section 10801 of the Third Class City Code provides:

> **(a) Appointment**.--Within 30 days of a vacancy in the office of mayor or other member of council or if an elected mayor or council member has failed to qualify under [S]ection 10701 (relating to elected officers, term, reelection and vacancy) prior to taking office, council must, by a majority of council's remaining members, appoint a qualified individual to fill the vacant office.
>
> **(b) President judge**.--If a council does not fill a vacancy within 30 days under subsection (a) or if a vacancy exists in the offices of at least a majority of the members of council, including the position of mayor, the president judge of the court of common pleas having jurisdiction within the city, must fill each vacancy upon either the petition of at least 10 qualified electors of the city or the petition of a majority of the remaining members of council.

11 Pa. C.S. § 10801.

In the Petition to Fill Vacancy, Electors alleged that "there is a vacancy in the Office of Mayor in [] York."  (Petition to Fill Vacancy, ¶ 2; Reproduced Record (R.R.) at 9a.)  They asserted that there is a vacancy because: (1) Mayor Helfrich did not attend or otherwise participate in York City Council's organizational meeting held on Tuesday, January 4, 2022; (2) he did not hold or otherwise participate in any

2

inauguration or swearing-in ceremony on Tuesday, January 4, 2022, or within 14 days thereof; and (3) he did not take the oath of office on Tuesday, January 4, 2022, or within 14 days thereof. *Id.*, ¶¶ 5-7, 9; R.R. at 9a. Electors alleged that, as a result, Mayor Helfrich is "disqualified" to hold the office of Mayor of York, thereby creating a vacancy therein. *Id.*, ¶ 10; R.R. at 9a. Electors argued that the president judge must, therefore, fill the vacancy created by Mayor Helfrich's lack of qualification pursuant to Section 10801(b) of the Third Class City Code. *Id.*, ¶ 27; R.R. at 13a.

On April 22, 2022, the trial court held a hearing and argument. At the start of the hearing, counsel for Mayor Helfrich presented an oral motion to dismiss on the grounds that Electors "lacked standing" to bring the action because it was, in effect, a *quo warranto* action. (Hearing Transcript (H.T.) at 4; R.R. at 39a-40a.) He argued that Electors failed to show that the Pennsylvania Attorney General's Office and the York County District Attorney's Office had declined to file a *quo warranto* action.

In response, Electors' counsel argued that the action was not a *quo warranto* action. Focusing on the language from Section 10701, he argued that Section 10701 of the Third Class City Code is "self-executing" because if the mayor fails to timely qualify, "a vacancy shall exist" and upon petition, the president judge may appoint a successor. He argued:

> [Mayor Helfrich] respectfully miscomprehends the proceeding. We are not here on a *quo warranto* action where the [trial c]ourt must first declare judicially that there's a vacancy of office. **In other words, [Mayor Helfrich is] not lawfully entitled to the office**.

> Rather, we [are] proceeding under the statute referenced in the petition, **which is self-operating, that because of [Mayor Helfrich's] failure to qualify per the statute, the referenced section of the [Third Class City Code] provides that the office is deemed vacant**.

*Id.* at 5-6; R.R. at 40a-41a. (emphasis added). The trial court denied Mayor Helfrich's motion to dismiss, at the time, and allowed the hearing to continue.

At the hearing, Mayor Helfrich testified that after he was reelected, he continued to take steps to be actively engaged in his duties and responsibilities of being Mayor of York. *Id.* at 15; R.R. at 50a. He testified that he was on vacation from December 30, 2021, to January 8, 2022. *Id.* at 9, 15; R.R. at 44a, 50a. On January 8, 2022, he traveled to see his daughter, and from January 17, 2022, to January 21, 2022, he attended the United States Conference of Mayors in Washington, D.C. (H.T. at 15, 57; R.R. at 50a, 92a.) On January 24, 2022, he took the oath of office administered by Judge Joel Toluba. *Id.* at 12; R.R. at 47a.

During closing arguments, Electors' counsel argued that, in order to qualify for office under Section 10701 of the Third Class City Code, the Mayor was required to qualify under Sections 10904(b) and 10905[2] of the Third Class City Code, and if he fails to qualify under those sections, he shall be ineligible for office. (H.T. at 21-23; R.R. at 56a-58a.)

Section 10701 of the Third Class City Code, entitled "Elected officers, term, reelection and vacancy," provides:

> An individual elected to a city office who fails to qualify in accordance with [S]ection 10904 (relating to offices to be held until qualification of successors) and 10905 (relating to oath of office, violation of oath and penalty) . . . shall be

---

[2] Section 10905 of the Third Class City Code, entitled "Oath of office, violation of oath and penalty," provides, in pertinent part:

> **(a) Oath required**.--Each officer of the city, whether elected or appointed, shall, before entering upon the officer's respective duties, take and subscribe an oath or affirmation of office pursuant to 53 Pa. C.S. § 1141 (relating to form of oaths of office).

11 Pa. C.S. § 10905.

4

ineligible to qualify. A vacancy shall exist in the office, and an individual shall be appointed to fill the vacancy in the manner provided under this part.

11 Pa. C.S. § 10701.

Section 10904 of the Third Class City Code, entitled "Offices to be held until qualification of successors," provides in its entirety:

> **(a) Successor.**--An officer of a city, who has been elected or appointed and has qualified under this chapter, shall hold office until the officer's successor meets all of the following:
>
> > (1) Is elected or appointed and takes the oath of office.
> >
> > (2) Provides the necessary bond.
> >
> > (3) Takes other necessary actions required by law to qualify to assume office.
>
> **(b) Failure to appear.--If an elected official fails to appear at the organizational meeting of council to demonstrate the official's qualifications for office and to take the oath of office either:**
>
> > **(1) the official must fully qualify for office and take the oath of office within 14 days of the date of the organizational meeting of council; or**
> >
> > **(2) the office of that elected official shall be deemed to be vacant and the vacancy shall be filled in the manner provided by this chapter.**
>
> **(c) Multiple terms expiring**.--Members whose terms have expired and who are to be replaced shall draw lots to determine which of the members shall continue to serve on council until the member's successor duly qualifies or takes the oath of office when all of the following apply:

> (1) The terms of office of more than one council at-large member expire.
>
> (2) More than one seated council member is to be replaced as the result of an election.
>
> (3) Only one of the newly elected council members fails to qualify to assume office.
>
> **(d) Continuing to hold office.--**An individual continuing to hold office under this section after the first Monday of January, which would have marked the end of the individual's term, may not participate in:
>
>> (1) The deliberations concerning the individual's successor.
>>
>> (2) A vote appointing the individual's successor.

11 Pa. C.S. § 10904 (emphasis added).

Electors' counsel argued that Section 10904(b) of the Third Class City Code governs, and because Mayor Helfrich did not attend or take office **within 14 days of the date of the organizational meeting of council**, he is now disqualified from taking office and a vacancy therefore exists.

On June 22, 2022, the trial court denied Electors' Petition to Fill Vacancy because it found no vacancy existed. According to the trial court, "the question [it] must decide is **whether a vacancy exists** in the office of mayor for [] York that must be filled." (Trial Court Op. at 16) (emphasis added). First, the trial court addressed Mayor Helfrich's argument that Electors lacked standing and held that Electors had standing because "[t]hey have a substantial, direct, and immediate interest in the outcome of litigation as they believe a vacancy exists for the office of mayor which must be filled." *Id.* The trial court also made several findings of fact. Apparently

accepting Electors' position that Section 10904(b) applied, the trial court found that Mayor Helfrich was out of state when the organizational meeting of Council convened on January 4, 2022. (Finding of Fact (FOF) No. 3.) The trial court concluded that while Mayor Helfrich was out of state, he was unable to take oath of office and that this tolled the 14-day statutory provision in Section 10904(b) of the Third Class City Code. (Conclusions of Law (COL) No. 6.) The trial court noted that there was "certainly no refusal to take the oath of office, nor did [Mayor Helfrich] ever intend to ignore his duty to take the oath of office." (COL No. 7.) The trial court determined that it was permissible for Mayor Helfrich to be sworn in on January 24, 2022, the next available business day after his return. (COL No. 6.) In the alternative, the trial court held that, even if the statutory provision was not tolled, "[it] would not disenfranchise [Mayor Helfrich] for what is trifling as possibly being three days late." (COL No. 8.) The trial court found the three-day difference to be *de minimis* and disregarded it as a minor error or defect of procedure which "did not affect the substantial rights of [Mayor Helfrich] to serve." *Id.*

Electors now appeal[3] and present a single issue for review, namely, whether the trial court erred in denying their Petition to Fill Vacancy on the ground that no vacancy existed in the Office of Mayor. They argue that Mayor Helfrich was unqualified for office due to his failure to take the oath of office within 14 days of the York City Council's organizational meeting as prescribed by the "clear and unambiguous" language of Section 10904(b) of the Third Class City Code. It is Electors' position that Section 10701 is "self-executing," and Mayor Helfrich's failure

---

[3] As to questions of law, including questions of statutory interpretation, our standard of review is *de novo*, and our scope of review is plenary. *Medical Shoppe, Ltd. v. Wayne Memorial Hospital*, 866 A.2d 455, 459 n.10 (Pa. Cmwlth. 2005). The standard of review of a decision of a trial court is limited to a determination of whether the trial court abused its discretion, committed an error of law, or violated constitutional rights. *Yarmey v. Zoning Hearing Board of Forty Fort Borough*, 745 A.2d 1274 (Pa. Cmwlth. 2000).

to timely take his oath automatically created a vacancy in the Office of Mayor of York, which must be filled in the manner provided for in Section 10801(b) of the Third Class City Code.  11 Pa. C.S. § 10801(b).

## II.    DISCUSSION

There are several problems with Electors' argument.  First, Electors' argument is based on the assumption that their Petition to Fill Vacancy was properly before the trial court.  To us, that is the real crux of the controversy.  The trial court took the position that the Petition to Fill Vacancy was properly before it.  A Petition to Fill a Vacancy under Section 10801, however, is only appropriate when a vacancy indisputably exists.  It is not the vehicle by which to determine **whether** a vacancy exists.

In *In re Vacancy in Board of School Directors of Carroll Township*, 180 A.2d 16 (Pa. 1962) (*Carroll*), 12 taxpayers in Carroll Township filed a petition in the trial court alleging that a vacancy existed on the Board of School Directors of the Carroll Township School District (school board) because 1 of the directors, John Blangger, had moved to New Jersey and had failed to attend 7 consecutive regular meetings of the school board.  The petition asked the trial court to fill the "supposed vacancy" in accordance with a prior version of Section 315 of the Public School Code of 1949,[4] then in effect, which provided:

> if any vacancy shall occur in any board of school directors by reason of death, resignation, removal from the district, or otherwise, such vacancy shall be filled by the remaining members of the board within thirty days. If by reason of tie vote or otherwise, such vacancy is not filled within thirty days, the Court of Common Pleas, upon petition of ten or more resident taxpayers, shall fill the vacancy by the appointment of a suitable person.

---

[4] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 3-315 (1953 version).

8

*Carroll*, 180 A.2d at 17. Blangger denied he had changed his residence, that he had failed to attend seven consecutive meetings, and that a vacancy existed. Blangger filed a motion to quash the petition to fill the vacancy, averring that the only manner in which his right to continue to hold office could be tested was by an action of *quo warranto*. The trial court accepted Blangger's position and dismissed the taxpayers' petition. On appeal, the Supreme Court affirmed, noting that the taxpayers were attempting "to declare an office vacant through *ex parte* proceedings, which is inimical to the whole scheme of democratic government." *Id.* The Supreme Court stated, "it must be obvious that the remedy [of seeking to fill a vacancy] cannot be asserted where the right to hold the office alleged to be vacant is still being asserted by one admittedly duly elected to it." *Id.*

In *Williams Appeal*, 167 A. 587 (Pa. 1933), five citizens of the Borough of Hughestown (petitioners) petitioned the Luzerne County Court of Quarter Sessions to fill the unexpired term of John Williams, a duly elected councilman of the borough who had allegedly abandoned his borough residence, thereby causing a vacancy for 30 days, which the borough council had not filled. In his answer, Williams denied that he had abandoned his residence and that there was a vacancy in the office to which he had been elected. The trial court rejected his representation and appointed Francis Mullarkey in his place. On appeal, the Supreme Court reversed, holding that the question as to whether Williams had forfeited his office by removal from the borough could not be decided in a petition to fill a vacancy. The Supreme Court explained:

> The only real dispute between the parties is whether appellant forfeited his office by removal from the borough. The question is not before us, because it has not been raised in a proper way. It is admitted that [Williams] was duly elected, and has at all times asserted his right to the office. Under the circumstances, such as these, [where] a public officer is *de facto* exercising the function of his office under color of right, we have repeatedly held that the proper remedy

9

to test his title is by Writ of Quo Warranto, which is not only adequate but exclusive. This is an attempt to remove an elected officer, who continues to assert his right to the office, in a manner other than that provided by law. It cannot succeed.

*Id*. at 587-88 (citations omitted).

Here, Mayor Helfrich was duly elected in November 2021. On January 24, 2022, he took his oath as required by Section 10905 of the Third Class City Code, 11 Pa. C.S. § 10905, and was sworn into office. Since that time, he has been continuously and actively engaged in his duties and responsibilities of being Mayor of York. As in *Carroll* and *Williams*, he is asserting his right to continue to hold office. He denies there is a vacancy. Thus, in these circumstances, Section 10701 is not, in fact, "self-executing" because there exists an outstanding question of whether there is a vacancy.[5] Electors' Petition to Fill Vacancy was, therefore, not properly before the trial court and the trial court should not have proceeded to decide whether a vacancy existed. Rather, it should have denied and dismissed the Petition to Fill Vacancy outright as premature and procedurally improper.

Because Electors are, in actuality, seeking to disenfranchise Mayor Helfrich, *i.e.*, **remove** him from his office because he allegedly did not timely take his oath, they are challenging, three months after he assumed office, his **right to public office.** The proper remedy to test Mayor Helfrich's title was by writ of *quo warranto*. *Carroll*; *Williams*; *Spykerman v. Township of West Chester*, 421 A.2d 641 (Pa. 1980)

---

[5] We can envision instances where Section 10701 may indeed be self-executing where the vacancy is incontrovertible or stipulated, for example, where the elected official dies before taking his oath, the elected official does not dispute that there is a vacancy, or the elected official is clearly under the minimum age required to assume office. However, where the elected official asserts his right to public office and is *de facto* exercising the functions of his office under color of right, as here, a petition to fill a vacancy is not the proper remedy. *See Carroll*; *Williams*.

10

(continuity of services of members of township board of supervisors in their positions as *de facto* public officers could not be interrupted in any proceeding other than a *quo warranto* proceeding); *In re Matter of One Hundred or More Qualified Electors*, 683 A.2d 283 (Pa. 1996); *Andrezjwski v. Borough of Millvale*, 673 A.2d 897, 887 (Pa. 1996).

Generally, *quo warranto* can be instituted only by the Attorney General or by a district attorney. *Mayer v. Hemphill*, 190 A.2d 444 (Pa. 1963). A private person may not bring a *quo warranto* action to redress a public wrong when he has no individual grievance. *Spykerman*, 421 A.2d at 649. The rationale for the exclusive nature of the *quo warranto* remedy is that

> *quo warranto* is the Gibraltar of stability in government tenure. Once a person is duly elected or duly appointed to public office, the continuity of his services may not be interrupted and the uniform working of the governmental machinery disorganized or disturbed by any proceeding less than a formal challenge to the office by that action which is now venerable with age, reinforced by countless precedent, and proved to be protective of all parties involved in a given controversy, namely *quo warranto*.

*Carroll*, 180 A.2d at 17.

In *In re One Hundred or More Qualified Electors*, in 1986, a sitting member of the Clairton Municipal Authority, Donald J. Desiderio, pled guilty to a felony. Notwithstanding this conviction, Desiderio was later elected as a member of the Municipality of Clairton Council in November 1993. No challenge was raised during the primary or the general election as to his qualifications to hold this council position because of his prior conviction. After Desiderio assumed office, a group of qualified electors in the Municipality of Clairton petitioned the Attorney General to bring an action in the nature of *quo warranto* to disqualify Desiderio from office because of his prior conviction. After the Attorney General declined to bring such an

11

action, the electors filed a Petition "To Declare Forfeited and Vacant the Council Seat of Donald J. Desiderio," challenging his qualifications to hold council position and seeking to **remove** him from office. 683 A.2d at 285. The trial court dismissed the petition for want of subject matter jurisdiction and lack of standing. The trial court explained that the only way to oust an elected official was via a *quo warranto* action. *Id.* It further held that a *quo warranto* action must be brought by the Attorney General or the district attorney and since neither had brought the action to remove Desiderio, the electors lacked standing to seek a *quo warranto* remedy. The electors appealed to this Court, which transferred the appeal directly to the Supreme Court pursuant to Section 722 of the Judicial Code, 42 Pa. C.S. § 722. The Supreme Court held that the electors "did not show any interest beyond that shared in common by all citizens of the Municipality of Clairton." *Id.* at 286. Rather, their complaint was simply that Desiderio was not qualified to be a member of the Municipality of Clairton Council as a result of his felony conviction. The Supreme Court concluded that

> [a]s such, the interest asserted is indistinguishable from the general public interest to which the law should be adhered. Neither do [the electors] show how they have been specially damaged by Desiderio holding office. Thus, the trial court correctly declined to convert [the electors'] equity action to one in *quo warranto* since [the electors] lacked standing to bring a *quo warranto* action.

*Id.*

Here, if Electors, who are private parties, wished to remove Mayor Helfrich from his office, they were required to (1) prove they had standing to file *quo warranto* action by demonstrating that both the Attorney General and the York County District Attorney declined to bring a *quo warranto* action; and (2) establish they have a special right or interest in the matter that is beyond just asserting that the law should be adhered to. *In re One Hundred or More Qualified Electors*. Electors did not do this. Instead, they filed a Petition to Fill Vacancy, and based their entire case on trying

12

to demonstrate the reasons why they believe there is a vacancy. As discussed, this was improper because a *quo warranto* proceeding was the only proper approach.

### III.   CONCLUSION

Electors' Petition to Fill Vacancy was procedurally improper. The trial court should not have decided the question of whether a vacancy existed in the Office of Mayor because that determination had to be tried exclusively in a *quo warranto* proceeding. Electors did not meet the requirements to bring a *quo warranto* action. Nonetheless, because the trial court ultimately arrived at the correct conclusion, *i.e.*, that the Petition to Fill Vacancy must be denied, we affirm.

_____
PATRICIA A. McCULLOUGH

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Electors of the City of York,      :
            Appellant      :
     :   No. 750 C.D. 2022
         v.      :
     :
Michael Helfrich, Mayor of      :
the City of York      :
     :
Appeal of: Henry Nixon,      :
Katherine Young, Steven Young,      :
Burton Parry, Elizabeth Culp,      :
Judith McKee, Thomas McKee,      :
Judy Ritter-Dickson, Darnell      :
Bowman, Shilvosky Buffaloe,      :
Carla Evette Freeland, Lois      :
Garnett, Tim Garnett, Sarai      :
Kearse, Wajid DeShields,      :
Marcus DeShields, Shareef      :
Hameed, Antonietta Smith      :

## ***ORDER***

AND NOW, this 26th day of February, 2024, the June 22, 2022 order of the Court of Common Pleas of York County is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge