Theresa COGHLAN

v.

The BOROUGH OF DARBY and The Borough Council of the Borough of Darby and Marie Howells and The Delaware County Board of Elections,

Appeal of Borough of Darby and Darby Borough Council.

Theresa Coghlan

v.

The Borough of Darby and The Borough Council of the Borough of Darby and Marie Howells and The Delaware County Board of Elections.

Appeal of Marie G. Howells.

Commonwealth Court of Pennsylvania.

Argued March 1, 2004.

Decided March 10, 2004.

Raymond J. Santarelli, Blue Bell, for appellants, Borough of Darby and Borough Council of the Borough of Darby.

John F. Innelli, Philadelphia, for appellant, M. Howells.

Francis J. Catania, Media, for appellee, The Delaware County Board of Elections.

Michael P. Pierce, Media, for appellee, T. Coghlan.

BEFORE: McGINLEY, J., LEAVITT, J., and McCLOSKEY, Senior Judge.

OPINION BY Judge LEAVITT.

The Borough of Darby (Borough), the Council of the Borough of Darby (Council) and Marie Howells (collectively Appellants) appeal a permanent injunction issued by the Court of Common Pleas of Delaware County (trial court). The injunction vacated the Council's appointment of Mrs. Howells to fill a Council vacancy and ordered the Delaware County Board of Elections (Election Board) to hold a special election on March 23, 2004 to fill the seat held by Mrs. Howells. We reverse.

The facts of the case are not in dispute. A vacancy in the Council membership occurred when Councilperson Michael Coghlan died on March 25, 2003. The then-constituted Council filled that vacancy on April 23, 2003, by appointing the decedent's widow, Theresa Coghlan, to serve out her husband's term, due to expire in January 2006. For reasons unknown, the election for the office vacated by Michael Coghlan's death was not placed on the ballot at the November 4, 2003 municipal election. On January 5, 2004, the first Monday in January following the November 4, 2003 municipal election, the newly-constituted Council held its biennial organization meeting. Also on that date, by operation of law, Mrs. Coghlan's term as a councilperson expired,[1] leaving a vacancy in the office of First Ward Councilperson. The new Council nominated and elected Mrs. Howells, a resident of the Borough's First Ward, to fill the vacancy caused by the expiration of Mrs. Coghlan's term. Council appointed Mrs. Howells to serve

until the first Monday in January after the November 1, 2005 municipal election, i.e., the next municipal election.[2]

On January 13, 2004, Mrs. Coghlan initiated this equity action against the Borough. On January 14, 2004, the trial court conducted an ex parte injunction proceeding. Present were Solicitor of the Election Board, the District Attorney of Delaware County,[3] counsel for plaintiff, Mrs. Coghlan, and counsel for the Borough. No one appeared on behalf of Mrs. Howells, and the ex parte hearing was conducted prior to service on the Borough.

At the conclusion of the January 14, 2004 ex parte hearing, the trial court granted Mrs. Coghlan a preliminary injunction to prevent Mrs. Howells from continuing to serve as a councilperson. The trial court did not require the posting of an injunction bond, and it scheduled a January 16, 2004 hearing on whether to continue the injunction.

At the January 16, 2004 hearing on this matter, the trial court explained that it considered the complaint to arise under the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, as amended, 25 P.S. §§ 2600–3591 (Election Code),[4] and, sua sponte, moved immediately to final disposition of the merits of the complaint. The trial court inquired into the mechanics of a special election from the Election Board. The trial court then ordered its January 14, 2003 order continued, and it scheduled another hearing for January 21, 2004.[5] The trial court also invited additional briefing by the parties.

---

1. All parties agree that Mrs. Coghlan's appointment expired on January 5, 2004.

2. On January 2, 2006, the vacancy presently filled by Mrs. Howells will be filled by an elected representative of the First Ward.

3. However, neither the Board nor the County was a party to the action.

4. It was the Borough's understanding that the action covered municipal governance and quo warranto issues.

5. The Borough sought this additional hearing to present evidence on its budget constraints against funding a special election. The Borough's financial advisor, Joseph P. Possenti,

On January 21, 2004, the trial court entered an order permanently removing Mrs. Howells from office; enjoining Council from filling the vacancy by appointment; and ordering a special election to fill the vacancy on Council. On January 26, 2004, Appellants filed post-trial motions that were denied on January 29, 2004. The Borough and Council appealed.[6] Subsequently, Mrs. Howells appealed.[7] On February 10, 2004, this Court consolidated the appeals and granted the Appellants' motion for expedited treatment.

On appeal,[8] Appellants seek a reversal of the trial court and raise eight issues for our consideration. They can be summarized as follows: (1) the plaintiff, Mrs. Coghlan, did not establish a clear right to relief because the applicable statutes do not provide for a special election of a Borough councilperson; (2) Mrs. Howells was not properly removed from office because *quo warranto,* not equity, is the only proceeding by which a court can remove a public official from office; (3) Council had the statutory authority, and duty, to appoint a resident of the First Ward, such as Mrs. Howells, to Council; (4) Mrs. Coghlan lacked standing to pursue either a *quo warranto* action for the removal of Mrs. Howells from Council or an equity action for a special election; and (5) the final injunction is invalid because of irregularities in the hearing procedures. We con-

sider only those issues necessary for disposition of this appeal.

## STANDING

We consider, first, the standing of Mrs. Coghlan to seek the removal of Mrs. Howells from office and the holding of a special election to fill her vacated seat. The trial court held that because plaintiff was the prior officeholder and a resident of the Borough's First Ward, she had a direct and substantial interest in removing Mrs. Howells and in having a special election held.

■■■ To have standing, a plaintiff must demonstrate a direct, substantial and immediate interest in the controversy. *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). An interest is substantial if there is a discernible adverse effect to an interest other than the interest of any citizen. *Id.* at 195, 346 A.2d at 282. It is direct if the petitioner can show a harm to her interest. *Id.* An interest is immediate it if is not a remote consequence of the judgment. *Id.* at 197, 346 A.2d at 283.

Mrs. Coghlan asserted in her complaint and papers that her right to vote for a representative of the Borough's First Ward had been denied. The Borough contends that the Legislature has established in The Borough Code[9] that the

---

Jr., testified that the Borough has no funds allocated to pay for a Special Election, and that accomplishing such an election will require moving funds from other taxpayer expenditures. Notes of Testimony, 1/21/2004, at pp. 8–10.

**6.** This appeal of the January 21, 2004 order was docketed at No. 205 C.D.2004; the appeal of the Borough and Council from the January 29, 2004 order was docketed at No. 260 C.D.2004.

**7.** This appeal was docketed at No. 259 C.D. 2004.

**8.** The scope and standard of review of a grant or denial of a permanent injunction is whether the plaintiff established a clear right to injunctive relief as a matter of law. *Buffalo Township v. Jones,* 571 Pa. 637, 644, 813 A.2d 659, 663–664 (2002). In deciding whether the trial court committed an error of law in granting or denying the permanent injunction, our scope of review is plenary. *Id.* at n. 4.

**9.** Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §§ 45101–48501.

time, place and manner for the elections of Borough offices is at a municipal election and at no other time. Further, there is no provision in the Election Code for the calling of a special election of a Borough councilperson. In short, Mrs. Coghlan has not suffered any cognizable harm. Finally, Appellants assert that Mrs. Coghlan's interest as a voter is a generalized interest, and not the required substantial, direct and immediate interest needed to pursue a special election. Her status as a former officeholder does not raise her interest above that of any other citizen in the Borough.

 On the other hand, where a citizen challenges an action that would otherwise go unchallenged in the courts, standing may be found. This legal precept is often applied where plaintiffs assert standing on the basis that they are taxpayers and, thus, have an interest in public fiscal expenditures. *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (Pa.1986)[10]

 This is a close case on standing. We agree with the trial court that a serious problem is raised in the complaint. The vacancy created by Mr. Coghlan's death should have led to the election of his replacement in the November 2003 municipal election. If a voter cannot challenge the failure of the Election Board to schedule and hold a required election, who can? Further, Mrs. Coghlan asserts that she would have run in that municipal election had it been held, a fact which supports her standing claim. On balance, therefore, we find that Mrs. Coghlan's status as a taxpayer and voter is sufficient to confer standing upon her to challenge the failure of the Election Board to place the Council vacancy on the ballot in the November 2003 municipal election.

 However, we do not agree that Mrs. Coghlan had standing to challenge the right of Mrs. Howells to hold the office of councilperson from the First Ward. It is well settled that *quo warranto* is the sole and exclusive remedy to try the right to hold an elected office, whether the right is that of a *de jure* or a *de facto* officer. *Brinton v. Kerr,* 320 Pa. 62, 64, 181 A. 569, 570 (1935). A *quo warranto* action can be brought only by the Attorney General, a district attorney or a person with a special right or interest as distinguished from the right or interest of the public generally. *Id.* A person who has been specifically damaged, such as a member of a city board of assessors unilaterally removed by the mayor, may file a *quo warranto* action. *Id.* A *quo warranto* action cannot be brought by a plaintiff who will not be placed in the office if the action is successful. *Commonwealth ex rel. Schermer v. Franek,* 311 Pa. 341, 166 A. 878 (1933); *Commonwealth ex rel. Biddle v. Crow,* 218 Pa. 234, 67 A. 355 (1907).

Neither the District Attorney of Delaware County nor the Pennsylvania Attorney General instituted this action as a *quo warranto* proceeding, and neither participated as a party in this litigation. Mrs. Coghlan lacked standing to challenge Mrs. Howells' right to serve as a member of Council. As of January 5, 2004, Mrs. Coghlan was a citizen and voter with no specialized interest in the office at issue.

The trial court erred in holding that Mrs. Coghlan had standing to seek Mrs.

---

10. In such a case, the taxpayer must demonstrate that (1) the governmental action would otherwise go unchallenged, (2) those directly and immediately affected by the governmental action are not inclined to challenge it, (3) judicial relief is appropriate, (4) there is no redress through other channels, and (5) no other persons are better suited to assert the claim. *Consumer Party of Pennsylvania,* 510 Pa. at 170, 507 A.2d at 329.

Howells' removal from office. However, we conclude that Mrs. Coghlan's status as a taxpayer and resident of the First Ward is sufficient to challenge the failure of the Election Board to place the First Ward councilperson vacancy on the November 2003 municipal election ballot.

### CLEAR RIGHT TO RELIEF

The *sine qua non* of an injunction is a clear right to relief. As this Court has explained:

> For a party to prevail on a petition for a permanent injunction, the party: [M]ust establish that his [1] right to relief is clear; [2] that there is an urgent necessity to avoid an injury which cannot be compensated for by damages; and [3] the greater injury will result from refusing rather than granting the relief requested.

*P.J.S. v. Pennsylvania State Ethics Commission*, 669 A.2d 1105, 1112–1113 (Pa. Cmwlth.1996). To prevail, it was incumbent upon Mrs. Coghlan to prove a clear right to a special election in these circumstances. The Appellants assert that she cannot meet this burden because the applicable statutes directed the newly constituted Council to fill the vacancy on January 5, 2004, by appointment and because there is no statutory basis for a special election of a Borough councilperson. We consider each argument in turn.

The Borough Code directs the duties and obligations of Council with respect to Borough governance. Section 901 of The Borough Code provides, in pertinent part, as follows:

> If any vacancy shall occur in the office of ... member of council ... by death, resignation, removal from the borough, or from a ward in the case of a ward office, ... or in any other manner whatsoever, the borough council shall fill such vacancy within thirty days by ap-

pointing, by resolution, a registered elector of the borough, or of the ward in the case of a ward office, to hold such office, if the term thereof continues so long, until the first Monday in January after the first municipal election occurring more than sixty days after the vacancy occurs, at which election an eligible person shall be elected to the office for the remainder of the term.

53 P.S. § 45901 (emphasis added). The vacancy created by Michael Coghlan's death was not filled in the November 2003 municipal election. Thus, Appellants assert that it became incumbent upon Council to fill that vacancy by appointing a member to serve until the next municipal election. We agree.

In Section 901 of The Borough Code, the Legislature stated in clear and unambiguous terms that Council alone possessed the power, duty and obligation to fill any and all vacancies in its membership occurring *for any reason whatsoever* and within thirty days thereof. 53 P.S. § 45901. As has been explained by our Supreme Court, a borough council's appointment power is the exclusive method of filling a vacancy. The appointment power "provide[s] a means whereby prompt, orderly and proper conduct of business might be secured where vacancies exist in borough offices." *Commonwealth ex rel. Fortney v. Wozney*, 326 Pa. 494, 497, 192 A. 648, 649 (1937).

The trial court's decision simply disregarded the plain language of Section 901 of The Borough Code that Council expeditiously appoint a replacement whenever there is a vacancy to minimize disruption to the Borough government. The trial court sought to sidestep this statutory scheme by holding that Section 901 did not contemplate successive appointments to the same vacancy. This is not persuasive.

The trial court failed to consider that, first, Section 901 places exclusive authority in Council to address a vacancy in its membership, and, second, it imposes no limit on the number of appointments Council can make to fill a vacancy. It is certainly the case that even if the election had been properly held in November 2003 that successive vacancies could have occurred prior to the elected councilperson taking office. Mrs. Coghlan's successor, after being elected in November 2003, could have died before the January 2004 biennial meeting. The trial court sought to justify its decision on the grounds that its order gave meaning to the "spirit of the statute." The clear and unambiguous words of the statute, however, cannot be ignored in a claimed pursuit of its spirit. 1 Pa.C.S. § 1921(b);[11] *In re Incorporation of Borough of Bear Creek Village*, 150 Pa.Cmwlth. 595, 616 A.2d 111 (1992).

In short, Section 901 of The Borough Code does not preclude successive appointments to fill vacancies, and it does not preclude a borough council from filling a vacancy previously filled by appointment. Here, through no fault of anyone, the vacancy created by Mr. Coghlan's death was not placed on the November 2003 municipal election ballot. The law is clear that the Legislature has charged Council to fill vacancies that arise in "any manner whatsoever." 53 P.S. § 45901. Council is further entitled to the presumption that it acted properly for the public good. *Hyam v. Upper Montgomery Joint Authority*, 399 Pa. 446, 457, 160 A.2d 539, 545 (1960). Thus, we hold that the trial court erred in setting aside the action of Council[12] to appoint Mrs. Howells to fill a vacancy.

Council acted properly under Section 901 of The Borough Code.

Next, we consider whether Mrs. Coghlan established a clear right to a special election to fill the vacancy on Council created as of January 5, 2004. As noted, Section 901 of The Borough Code, the controlling legislation, provides that elections to fill a vacancy in borough offices must occur at a municipal election. The Election Code defines a "municipal election" as "the election which the Constitution of this Commonwealth requires to be held in odd-numbered years." Section 102(j) of the Election Code, 25 P.S. § 2602(j). The Pennsylvania Constitution also identifies "municipal election day" as "the Tuesday next following the first Monday of November in each odd-numbered year." Pa. Const. Art. 7, § 3. The Election Code further provides that a "municipal election shall be held biennially on the Tuesday next following the first Monday of November in each odd-numbered year. All ... borough, [and] ... ward officers shall be elected at the municipal election." Section 602 of the Election Code, 25 P.S. § 2752.

The law is equally clear that a "special election" is not a "municipal election." The Election Code states that a " 'special election' shall mean any election *other than a* regular, general *municipal* or primary *election.*" Section 102(v) of the Election Code, 25 P.S. § 2602(v) (emphasis added). The Election Code further provides that it "shall not be construed as requiring a special election [for members of councils or legislative bodies of cities, boroughs, towns and townships] in any case where such election is not required under any law now

---

**11.** It states: "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

**12.** It was also error because Mrs. Howells could only be removed in a *quo warranto* action, which was not filed here and, in any case, could not be filed by Mrs. Coghlan because she lacked standing.

or hereafter enacted." Section 628.1 of the Election Code, 25 P.S. § 2778.1.[13] Here, there is no statute that requires the holding of a "special election" for the office seat at issue; the controlling statutory law, The Borough Code and the Election Code, provide without ambiguity that an election for the office of a borough councilperson can only occur at a municipal election.

Lest there be any doubt, controlling precedent also holds that a special election may not be ordered by a court sitting in equity where not expressly provided for by statute. In *Watson v. Witkin,* 343 Pa. 1, 22 A.2d 17 (1941), our Supreme Court reversed a court's order for a special election that lacked statutory authority. It explained that

> [t]he failure of the legislature to make any provision for special elections to fill the office of [borough council] is of legal significance. "It is a general principle of interpretation that the mention of one thing implies the exclusion of another thing; *expressio unius est exclusio alterius.*"

*Id.* at 17, 22 A.2d at 24. *See also Cali v. City of Philadelphia,* 406 Pa. 290, 177 A.2d 824 (1962).[14]

For municipalities controlled by The Borough Code, as is the case here, the Legislature has mandated that all elections to fill any vacancy occurring in any borough office, arising in any manner whatsoever, shall take place only at municipal elections. This precludes a special election to fill a vacant borough office at another time. Accordingly, the trial court erred in ordering a special election for the office at issue, and plaintiff's action for a special election lacked the necessary foundation. Mrs. Coghlan did not have any right, let alone a clear right, to a special election.

## CONCLUSION

We agree with the trial court that citizens must be protected against "disenfranchisement." Trial Court Opinion, at 13. Had Mrs. Coghlan initiated a timely mandamus action to require the Election Board to include the election of a new councilperson to fill the vacancy created by her husband's death in the November 2003 municipal election, it may have been successful. The Borough and Council have no authority to issue a writ of election[15] and,

---

13. The trial court misconstrued the Election Code provisions on special elections. Where our legislature has found it necessary to provide for the calling of a special election, it has so provided; there is specific legislation pertaining to special elections for vacancies in the offices of United States Senator, Representative in Congress and Senator and Representative in the Pennsylvania General Assembly. *See* Sections 626–628 of the Election Code, 25 P.S. §§ 2776–2778. Municipalities with the right of home rule may fill vacancies in municipal offices at elections other than municipal elections, but even those are regularly scheduled primaries or general elections. *See, e.g.,* 323 Pa.Code § 21.2–205 (Township of Radnor Home Rule Charter); 323 Pa.Code § 23.2–210 (Township of Haverford Home Rule Charter); 323 Pa.Code § 31.2–209 (Township of Middletown Home Rule Charter), all of which were enacted pursuant to the terms and conditions of the rele-

vant Home Rule Charter & Optional Plan Law.

14. In *Cali,* the Supreme Court reasoned that the Pennsylvania Constitution does not *prohibit* the holding of an election to fill out the remainder of a municipal officer's term in an even-numbered year. However, because the Election Code did not authorize elections for municipal offices in even numbered years, the Election Code precluded such elections.

15. The Pennsylvania Constitution provides that "[w]henever a vacancy shall occur in either House, the presiding officer thereof shall issue a writ of election to fill such vacancy for the remainder of the term." Pa. Const. Art. II, § 2. *See also* Section 628 of the Election Code, 25 P.S. § 2778 (setting forth procedure for issuance of writ of election upon vacancy in either house of the General

thus, they would not be proper parties to such a mandamus action. In the absence of express statutory authority for a special election, it is now too late to redress the omissions on the November 2003 ballot. In any case, we are not convinced that having a vacancy on a borough council requires the extreme response of a mandatory injunction. As has been observed by our Supreme Court,

> If a President of the United States dies one day or one month or one year after his inauguration, the Vice President succeeds him and serves the balance of the four-year term, with no right in the people to vote for a successor. Exactly the same thing happens in Pennsylvania. If a Governor dies or resigns one day or one month or one year after his inauguration, the Lieutenant Governor succeeds him and serves out the balance of the four-year term, without an election. But even if appellants' worst fears are realized, it is too often forgotten that under our basic form and system of Constitutional Government the power and duty of a Supreme Court is interpretative, not legislative. We are not a Supreme, or even a Superior Legislature, and we have no power to redraw the Constitution or to rewrite Legislative Acts or Charters, desirable as the sometimes would be.

*Cali*, 406 Pa. at 312, 177 A.2d at 835 (concluding that it would not be "appalling" to postpone for one year the election of a successor mayor of Philadelphia). The failure to place the Council vacancy on the November 2003 ballot is redressible,

but not in this type of action, against these named defendants and at this late date.

Accordingly, we reverse the trial court.[16]

### ORDER

AND NOW, this 10th day of March, 2004, the order of the Delaware County Court of Common Pleas dated January 21, 2004 in the above-captioned matter is hereby reversed.

---

Assembly); *Commonwealth ex. rel. Specter v. D'Ortona*, 423 Pa. 22, 223 A.2d 100 (1966) (holding that Philadelphia charter provision imposed mandatory duty on president of city council to issue writ of election for special election to fill vacancy on council). The Bor-

ough Code, applicable here, contains no comparable provision for issuance of a writ of election.

16. Because of this holding, we need not address the other issues raised by Appellants.